IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Michael Klein,　　　　　　　　　　　　　　　　　Case No. 3:08-cv-2268

　　　　　Plaintiff

　　v.　　　　　　　　　　　　　　　　　　　　　ORDER

Central States, Southeast and
　　Southwest Areas Health and Welfare Plan,

　　　　　Defendant.

This case arises from defendant Central States, Southeast and Southwest Ares Health and Welfare Plan's [Central States] denial of plaintiff Michael Klein's claim for benefits under an ERISA health and welfare plan. On February 20, 2009, this court granted Klein's motion for judgment on the administrative record and awarded him disability benefits. [Doc. 16]. Klein now seeks attorney's fees and costs under 29 U.S.C. § 1132(g)(1).

Jurisdiction is proper under 28 U.S.C. § 1331. Pending is Klein's motion for attorney's fees [Doc. 19]. For the following reasons I grant Klein's request for attorney's fees.

**Background**

Plaintiff Michael Klein, a participant in the Central States Health and Welfare Plan [the Plan], suffers from chronic lymphocytic leukemia. Klein's physician, Dr. Leslie Andritsos,

recommended an allogeneic bone marrow transplant.

Central States denied Klein's claim for benefits, concluding that the procedure was experimental. In so concluding, Central States relied on the opinions of Dr. Howard Fingert and the reports of three other expert reviewers, who were secured by Medical Mutual for a separate review process. Two of the three Medical Mutual reviewers recommended that Medical Mutual deny treatment. The Medical Mutual asked the reviewers to evaluate Klein's claim based on criteria under Ohio law, not the terms of the Central States Plan document. Dr. Fingert was a physician reviewer for Central States, and he concluded that Central States should deny Klein's claim under the terms of the Plan. Dr. Klein's report, however, indicated that his opinion was based on "submitted clinical highlights**."** (AR 011).

On February 20, 2009, this court concluded that Central States acted arbitrarily and capriciously in denying Klein's claim and ordered Central States to award Klein benefits. Defendants filed notice of appeal on March 4, 2009. On March 5, 2009, Klein filed the instant motion for attorney's fees, requesting a total of $6900 for Klein's attorney, Tony C. Merry. [Doc. 19]. Klein also filed a bill of costs [Doc. 22].

## Discussion

### 1. Whether a Decision on Plaintiff's Motion for Attorney's Fees and Costs Should be Deferred Pending Defendant's Appeal

Defendants argue that this court should delay considering plaintiff's motion for fees pending its appeal. In an ERISA action, the trial court may award reasonable attorney's fees and costs. 29 U.S. C. § 1132 (g)(1).

This court may, in its discretion, deny the motion without prejudice pending the outcome of

the appeal. *See Rybarczyk v. TRW, Inc.* 1997 WL 580609, at *4 (N.D. Ohio Sept. 5). Nothing, however, requires a court to do so. In fact, the 1993 Advisory Committee Note to Fed. R. Civ. Pro. 454(d)(2)(B) stated that courts have discretion to defer motions for fees, but suggested that courts may prefer "to consider attorneys' fees immediately after rendering its judgment on the merits of the case."

Generally, an appeal alone does not justify postponing a decision on a request for attorney's fees. *See In re Unisys Corp. Retiree Medical Benefits ERISA Litigation,* 2007 WL 4287393, at *1-2 (E.D. Pa.)("[T]he usual course is for the Court to consider attorney's fees promptly after the merits decision rather than stay the Fee Petition until resolution of the appeal."); *Lyon v. Kimberly Clark Corp. Pension Plan,* 2007 WL 1852215, at *1 (D.N.J.) (defendant's "pending appeal in and of itself" is not "sufficient reason for this Court to deny without prejudice Plaintiff's present motion for attorney's fees"); *McCloud v. City of Sunbury,* 2006 WL 449198, at *1 (M.D. Pa.) (declining to day motion for attorney's fees and costs pending outcome of an appeal).

As plaintiffs note, efficiency favors ruling on the motion for fees and costs now. Defendant may appeal this award of attorney's fees and costs and move the Sixth Circuit to consolidate its attorney's fee appeal with its appeal on the merits. *See Slip 'N Slide Records, Inc. v. TVT Records, LLC,* 2007 WL 1098751, at *3 (S.D. Fla.) (declining to defer plaintiff's motion for attorney's fees pending defendant's appeal, noting that "the Court of Appeals may want to consider" the award of attorney's fees "in conjunction with an appeal of the ultimate judgment rendered in the case.")

Because defendants have offered no reason other than their appeal to defer consideration of plaintiff's motion for attorney's fees and costs, I decline to do so.

## 2. Whether the *King* Factors Favor Awarding Attorney's Fees to Plaintiff

The next consideration is whether the factors set forth in *Secretary of Dep't of Labor v. King,* 775 F.2d 666, 669 (6th Cir. 1985) favor an award of attorney's fees in this case. In *King,* the Sixth Circuit listed five factors that guide courts' discretion in awarding fees and costs:

> 1) the degree of the opposing party's culpability or bad faith; 2) the opposing party's ability to satisfy an award of attorney's fees; 3) the deterrent effect of an award on other persons under similar circumstances; 4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and 5) the relative merits of the parties' positions.

*Id.* These factors are only considerations; they are "not statutory and typically not dispositive." *Moon v. Unum Provident Corp.,* 461 F.3d 639, 643 (6th Cir. 2006); *First Trust Corp v. Bryant,* 410 F.3d 842, 851 (6th Cir. 2005).

### A. Degree of Central States's Culpability

The first factor is whether Central States's rejection of Klein's claim shows the requisite culpability or bad faith. Central States argues that it reasonably relied on the opinions of experts and its legal department in denying the claim, and that therefore it did not act in bad faith.

A finding that a plan administrator's decision was arbitrary and capricious "does not necessarily indicate culpability or bad faith." *Moon v. Unum Provident Corp,* 461 F.3d 639, 643 (6th Cir. 2006). If a plan administrator denied a claim "based on a theory that lacked legitimate foundation" or relied only on "isolated snippets from the record," however, a defendant may be culpable. *Id.* Reasonable reliance on expert opinions may indicate that the trustee acted with care and in good faith, but an independent expert appraisal is not a "magic wand that fiduciaries may simply wave over a transaction to ensure that their responsibilities are fulfilled." *Donovan v. Cunningham,* 716 F.2d 1455, 1474 (5th Cir. 1983). An expert opinion is "a tool, and, like all tools, is useful only if used properly." *Id.*

4

In *Moon, supra,* 461 F.3d at 643, the Sixth Circuit concluded that the plan administrator acted in bad faith. The trustee denied plaintiff's claim "solely on the opinion of a physician in its employ." *Id.* at 644. In addition, this physician "based his findings on selective information in the administrative record and did not examine" the plaintiff. *Id.* The court noted that a trustee engages in misconduct where the trustee sends a "cherry-picked" file to an expert "in hopes of obtaining a favorable report." *Id.* (quoting *Spangler v. Lockheed Martin Energy Systems, Inc.,* 313 F.3d 356, 362 (6th Cir. 2002)).

In this case, Central States's reliance on Dr. Fingert's and the three Medial Mutual experts shows the requisite culpability. Central States relied on Dr. Fingert's opinion, but cannot show whether he received or considered Klein's entire medical record. Dr. Fingert's own report indicates that he reviewed only the "submitted clinical highlights" of Klein's case – a phrase which, on its face, indicates that Dr. Fingert received and reviewed less than all of the medical information about Klein's case. The defendant's affidavit from Albert E. Nelson does not remedy this problem because, as this court found in considering the merits, Nelson had no direct knowledge of what information Dr. Fingert actually reviewed in making his determination. Like the physician's opinion in *Moon*, Dr. Fingert's report was based on selective information, and the defendant's reliance on it is culpable.

Likewise, the trustee's reliance on the three Medical Mutual expert opinions shows culpability. Central States relied on these opinions even though the three physicians were asked to respond to a question not authorized by the Plan document. The three physicians opined on whether the costs of the requested treatment outweighed its benefits. The Plan, in contrast, permits a trustee to deny treatment only if its benefits are unproven. These are not, as defendants assert, related

5

inquiries; the cost/benefit inquiry requires a greater showing to receive benefits. Because the experts were not asked to evaluate whether the treatment was "experimental," moreover, their opinions are cursory on this point. Even though the third reviewer used the word "experimental" in his opinion, the opinion provides no analysis of this point whatsoever because this was not the question presented to the reviewer. Central States had no basis for evaluating this opinion or for selecting one expert's opinion over another.

Central States's culpability is compounded by its patently unreasonable interpretation of the opinion of plaintiff's treating physician, Dr. Andritsos. Central States asserted that Dr. Andritsos concluded that the proposed treatment was "experimental" in a February 13, 2008 letter. The letter plainly does not state that the treatment is "experimental"; rather, it indicates that Dr. Andritsos supported the proposed transplant. (*See* AR 007).

Central States argues that the trustees acted in good faith by seeking and relying on an opinion from the law department. Had Central States's legal department advised the trustees whether denying Klein's claim was consistent with its obligations under ERISA, Central States's contention would be correct. Trustees have various duties under ERISA, including that an administrator process discretionary claims "solely in the interests of the participants and beneficiaries" of the Plan. 29 U.S.C. § 1104(a)(1); *Metropolitan Life Ins. Co. v, Glenn,* U.S. , 128 S. Ct. 2343, 2350 (2008). Legal advice as to whether denying a claim comports with this duty could provide evidence that the denial was in good faith.

This is not the legal advice that Central States's law department provided, however. The law department advised the trustees as to whether a court, applying a deferential standard of review, was likely to find a denial in error. Such advice goes not to whether denial would be consistent with the

6

trustee's fiduciary duties under ERISA, but whether denial is defensible on appeal. Central States cannot use this letter as evidence of good faith. As described in this court's opinion on the merits, however, Klein cannot use this letter as evidence of bad faith because the record is unclear whether the trustees considered this legal opinion in deciding to deny Klein's claim.

## B. Central States's Ability to Satisfy an Award

The second factor is whether Central States has the ability to satisfy an award of attorney's fees and costs. Central States concedes that it has enough assets to satisfy an award of fees and costs, but argues that this factor is not relevant.

First, Central States argues that because nearly all ERISA trustees have sufficient asserts to pay fees, this factor is only for "exclusionary" purposes, implying that a finding that the defendant is able does not weigh in plaintiff's favor. Courts, however, have considered a large ERISA trustee's ability to pay to weigh in a plaintiff's favor. *See, e.g., Moon, supra,* 461 F.3d at 644; *Gaeth v. Hartford Life Ins. Co.,* 538 F.3d 524, 529 (6th Cir. 2008) (Courts are free to consider plaintiff's ability to pay, provided that courts place "no greater weight on this factor than on any other factor in the analysis" or treat this factor as "outcome determinative.")

Second, Central States urges this court to weight its status as a not-for-profit trust in its favor because awarding fees will reduce the corpus of the trust in injure other participants rather than cut into profit. Defendants cite *Chicago Painters and Decorators Pension, Health and Welfare and Deferred Sav. Plan Trust v. Karr Bros, Inc.,* 755 F.2d 1285, 1292 (7th Cir, 1985) for the proposition that a trust fund's non-profit status weighs against an award of attorney's fees. This case, however, involved a suit by a non-profit trust against a for-profit employer for failing to make contributions. *Id.* at 1286-1287. The court stated that, in a circumstance like this, "an award against the trust fund

7

might be unjust" based on the trust fund's relative ability to pay as compared to the other party. *Id.* at 1292.

Where the opposing party is an individual claimant, as Klein is here, this analysis does not apply because even a non-profit trust is better situated to pay costs and fees than an plaintiff who has been arbitrarily and capriciously denied ERISA benefits. Further, the court's holding in *Chicago Painters and Decorators* does not suggest that a trial court must weight a trust's non-profit status in favor of the trust, only that the trial court may properly do so to avoid injustice. *Id.* This factor weighs in Klein's favor.

### C. Deterrent Effect of an Award

The next factor is whether an award of attorney's fees and costs will deter future plan administrators from wrongfully denying claims.

Awarding attorney's fees deters plan administrators from "denying benefits on the basis of a perfunctory analysis." *Plummer v. Hartford Life Ins. Co.,* 2007 WL 838926, at *2 (S.D. Ohio). Because claimants may not seek extra-contractual damages in an ERISA action, the "only consequence of an arbitrary denial of benefits," apart from fees and costs, "is the chance of being sued and a possibility of restatement of benefits at some future date." *Id.* Awarding attorney's fees in appropriate cases, therefore, provides an important incentive to plan administrators to "adhere to their fiduciary obligations." *Id.*

For deterrence to be proper, a plan administrator must have acted with culpability or bad faith. *See Foltice v. Guardsman Products, Inc.*, 98 F.3d 933, 937 (6th Cir. 1996); *Gard v. Blankenburg*, 33 Fed. Appx. 722, 732 (6th Cir. 2002). As discussed above, Central States did act culpably by failing to conduct more than a cursory review before denying Klein's claim. This factor

weighs in Klein's favor.

### D. Whether Klein Sought to Confer a Common Benefit on All Participants

The fourth factor is whether Klein, in filing his claim, acted for the common benefit or to resolve an unsettled issue of ERISA law. Plaintiff concedes that he filed his claim for his own benefit, and that this case does not present unresolved issues of law. This factor weighs against Klein.

### E. Relative Merits of the Parties' Positions

The fifth factor is the relative merits of the parties' positions. In the opinion on the merits, this court concluded that Klein's position was meritorious and that Central States's decision to deny his claim was arbitrary and capricious. Further, as described above, Central States wrongfully relied on the opinions of experts who ostensibly considered a partial record of Klein's case or who responded to questions inconsistent with the terms of the Plan. Defendant attempts to show that this factor weighs in their favor by re-arguing the merits of their case. I conclude, however, that the relative merits of the parties' positions favors Klein.

### F. Weighing the Factors

On weighing the five *King* factors, I conclude that an award of attorney's fees to the plaintiff is warranted in this case. Even though Klein filed suit to vindicate his own rights and not the rights of others, Central States's culpability, Central States's ability to satisfy an award, the need to deter future wrongful denials, and the relative merits of the case favor an award of attorney's fees to Klein.

### 3. Whether the Fees Plaintiff Requests are Reasonable

The next issue is whether the fees plaintiff requests, a total of $6930.00, is unreasonable. Plaintiff requests $300 per hour for 23.1 hours worked. Of the 23.1 hours, plaintiff's counsel spent 19.8 hours litigating the merits and an additional 3.3 hours preparing his fee petition. Defendant argues that the court should only compensate 0.594 hours for the fee petition, or 3% of the total hours worked on the merits case. Defendant concludes that plaintiff's counsel should receive only $6118.20 (20.394 hours x $300 per hour).

Plaintiff must show that the requested fees are reasonable. *See Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983). Typically, a reasonable fee is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* at 433. Plaintiff suggests that a reasonable rate is $300, and the defendants do not contest that this figure is reasonable. Plaintiff adequately supports this hourly rate with affidavits regarding plaintiff's counsel's work experience in the ERISA field and range of fees approved in the Sixth Circuit. The defendant also concedes that plaintiff's estimated hours for litigating the merits, 19.8 is reasonable – and it is.

The issue here is whether plaintiff may recover for more than 3% of the hours spent litigating the merits for time spent preparing the fee petition. Absent "unusual circumstances," compensable hours spent preparing a fee petition may not exceed 3% of the hours spent on the main case. *Coulter v. State of Tennessee,* 805 F.2d 146, 151 (6th Cir. 1986) (considering attorney's fee petition in a civil rights case).

The limitation from *Coulter*, however, does not apply to cases in which most of an attorney's work occurs in administrative proceedings, before the case reaches the district court. In *Gross v. Perrysburg Exempted Village School District,* 306 F. Supp. 2d 726, 742 (N.D. Ohio 2004), this court found that IDEA cases presented "unusual circumstances" because the main case is "litigated at the

10

administrative level, not in federal court." This court abandoned the *Coulter* limitation in this context because the 3% limit "disadvantages IDEA plaintiffs much more than it does civil rights plaintiffs." *Id.*; *see also Moore v. Crestwood Local Sch. Dist.,* 804 F. Supp. 960, 969-70 (N.D. Ohio 1992).

Whether ERISA benefits claims are similarly exempt from the *Coulter* rule is an issue of first impression in this Circuit. As in IDEA cases, however, most of the work in ERISA cases occurs during the administrative proceedings. ERISA does not permit claimants to recover attorney fees for legal work performed during administrative proceedings regarding benefits. *Anderson v. Procter & Gamble, Co.,* 220 F.3d 449, 456 (6th Cir. 2000). The 3% *Coulter* limitation, therefore, creates a similar disadvantage for ERISA claimants as it does for IDEA plaintiffs. ERISA claims, therefore, also present "unusual circumstances" that make *Coulter* inapplicable.

I conclude that plaintiffs may seek compensation for 3.3 hours of legal work for preparing the fee petition. Plaintiffs, therefore, are entitled to the requested $6930 total in attorney's fees.

## Conclusion

For the foregoing reasons, it is hereby ORDERED THAT Plaintiff's Motion for Attorney's Fees [Doc. 19] be, and the same hereby is, granted.

So ordered.

S/James G. Carr<br>
James G. Carr<br>
Chief Judge